Filed 11/26/24  P. v. Davis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C099466 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF99000190701) |
| v. | |
| DENNIS MICHAEL DAVIS, | |
| Defendant and Appellant. | |

Defendant Dennis Michael Davis is serving a sentence of life without the possibility of parole after a jury found him guilty of murdering a store clerk during a robbery with an accomplice.  He appeals the trial court's denial of his petition for resentencing under Penal Code section 1172.6[1] following an evidentiary hearing in which

---

[1] Undesignated statutory references are to the Penal Code.  Defendant filed his resentencing petition under former section 1170.95.  Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6, with no relevant change.  (Stats. 2022, ch. 58, § 10.)  For ease of reference, we cite to section 1172.6 throughout this opinion.

the court found that defendant could still be convicted of first degree felony murder. On appeal, defendant argues insufficient evidence supports the trial court's finding that he was a major participant in the robbery or that he acted with reckless indifference to human life. Finding no merit to these contentions, we affirm the order denying defendant's section 1172.6 petition.

## BACKGROUND

### I

### *Jury Trial Proceedings*

In 1999, the People charged defendant and codefendant Michael Wilson with the special-circumstance murder of Don McElroy (§ 187, subd. (a); count 1) during the commission of a robbery (§ 190.2, subd. (a)(17)), robbery (§ 211; count 2), and unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 3). For the murder and robbery counts, it was alleged that defendant and Wilson personally used a deadly and dangerous weapon (§ 12022, subd. (b)). Various prior conviction and prior prison term enhancements were also alleged as to defendant (§§ 667, subd. (a), 667.5, subd. (b), 1170.12).

A jury found defendant guilty of first degree murder, second degree robbery, and unlawful taking of a vehicle.[2] It also found the robbery-murder special circumstance true but found not true the allegations that defendant personally used a deadly weapon. For the murder, defendant received life without the possibility of parole; for the remaining counts and enhancements, defendant received a determinate term of 17 years 4 months in state prison. This court affirmed the judgment on appeal. (*Davis*, *supra*, C041602.)

---

[2] Wilson pled guilty to first degree murder with personal use of a deadly weapon and unlawful driving or taking of a vehicle and was sentenced to an indeterminate term of 26 years to life. (*People v. Davis* (Oct. 9, 2003, C041602) [nonpub. opn.] (*Davis*).) He asserted his Fifth Amendment privilege against self-incrimination in defendant's trial and refused to testify.

## II

### *Petition for Resentencing*

In 2021, defendant petitioned for resentencing under section 1172.6, asserting he could no longer be convicted of murder after changes made by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) to sections 188 and 189. The People opposed the petition, arguing defendant failed to make a prima facie showing because the factual summary in *Davis*, *supra*, C041602, showed that defendant was either the actual killer, aided and abetted codefendant Wilson in the killing, or was a major participant in the underlying felony who acted with reckless indifference to human life. Defendant's appointed counsel argued he had made a sufficient prima facie showing because, as the *Davis* decision noted, the jury was presented with both felony murder and premeditated murder theories and returned a guilty verdict for first degree murder without revealing the theory upon which its verdict rested.

After considering the briefing, the trial court issued an order to show cause and set the matter for an evidentiary hearing. At the hearing, the parties stipulated to the admission of trial testimony contained in four volumes[3] of the reporter's transcript in *Davis*, *supra*, C041602, that the People had submitted for the court's review. No other evidence was considered by the trial court in ruling on the petition.

The submitted trial evidence established the following:[4] On March 14, 1999, McElroy was murdered at the Fishen' Hole bait shop where he worked as a clerk.

---

[3] Volumes 12 through 15 of the 19-volume reporter's transcript.

[4] We granted the People's request to incorporate by reference the record from defendant's prior appeal in *Davis*, *supra*, C041602. However, because the trial court acted as an independent fact finder at the evidentiary hearing (see § 1172.6, subd. (d); see also *People v. Richardson* (2022) 79 Cal.App.5th 1085, 1088 [trial court independently found beyond a reasonable doubt that the defendant was a major participant and that he acted with reckless indifference to human life]) this factual summary is based on the trial

McElroy died of both sharp force and blunt force injuries, including multiple stab wounds and fractured bones in the neck and face. A strand of hair consistent with defendant's was found in one of McElroy's wounds. Two metal rods covered in blood were found at the scene. Wilson's blood, and not defendant's, was found inside the store.

On the morning McElroy was killed, Robert Martinez saw defendant and Wilson on a hill behind the Fishen' Hole. Although at trial he denied it, Martinez told police that defendant and Wilson said they were "going to go down to the store and take, steal, or rob some beer," and that he saw them walk down the hill and into the store. Defendant had also told Martinez that "he wanted to do something that would make him go back to prison." Immediately after observing defendant and Wilson go into the store, Martinez saw Danny Rhoades exit the store looking visibly upset. Rhoades came up the hill and told Martinez that while leaving the store he heard a loud noise and looked back to see McElroy on the ground.

Stanley Valdez saw Martinez on the hill before McElroy was killed. As he spoke with Martinez, Valdez saw Danny Rhoades coming up the hill after leaving the store. Rhoades was agitated and shaky, and he told Valdez and Martinez that "they had [done] it," explaining that when defendant and Wilson walked into the store, he heard a "loud crash and bang" and turned around to see McElroy on the floor with defendant and Wilson standing over him. Rhoades then quickly left the store.

Arthur Daniel Rhoades[5] got a case of beer from the Fishen' Hole the morning of the homicide and then told police he shared it with several people on the hill, including Martinez, Valdez, defendant, and Wilson (although at trial he later denied seeing defendant or Wilson on the hill that morning). When the beer ran low, Rhoades went

---

testimony contained in the selected reporter's transcripts that the parties stipulated to as the evidence the trial court could consider during the evidentiary hearing.

[5] During trial, it appears several witnesses referred to him as Danny Rhoades.

back to the Fishen' Hole to ask McElroy for a second case of beer on credit, but McElroy refused; as he was leaving the store, Rhoades saw defendant and Wilson enter the store and he saw Wilson hit McElroy after which both men fell to the ground with defendant nearby.

Defendant and Wilson arrived at the home of defendant's sister, Teena Davis, later that morning. Defendant dumped a bunch of coins on her couch, which she hid under her bed. During a subsequent police interview, Teena Davis said that Wilson had blood on his hands, that defendant helped Wilson remove his shirt and opened the bathroom door so Wilson could wash his hands, and that she thoroughly cleaned the bathroom afterwards. At trial, she testified she remembered hearing about McElroy's death and that her brother and Wilson had showed up at her house around that time, but she claimed she did not remember them arriving in a small blue car or telling her that they had just killed the clerk at the Fishen' Hole.

After defendant and Wilson left Teena Davis's house, she went to visit defendant's girlfriend, Teresa Arellano. Teena Davis was upset and crying when she told Arellano that defendant and Wilson had showed up at her house that morning in a blue vehicle and told her that they had robbed and killed a store clerk. Wilson had blood on his hands, but Teena Davis said she did not see any blood on defendant. Wilson removed his blood-stained clothes and burned them. The men proceeded to count out money before leaving in a blue Toyota car.

Later that day, defendant showed up to the home of Frederick Taylor, his lifelong friend. Defendant brought beer with him, and the two then drank together. At trial, Taylor denied telling police that defendant arrived at his house driving a small, blue car; that defendant said he got the beer from robbing a store; that defendant said he had killed the store clerk and took the beer, emptied the cash register, and then took the car and left; that defendant showed him blood on his hands; and that after defendant told him that he

5

had killed the store clerk, Taylor got scared and left his house. Excerpts of Taylor's audio-recorded police interview contradicting his trial testimony were played for the jury.

When interviewed a few days after McElroy's death, defendant admitted to police that McElroy had refused to sell him beer because he did not have enough money. According to defendant, McElroy "always treated Indians bad" and was "disrespectful" to him, which made him angry. He admitted being in the Fishen' Hole when McElroy was murdered, which defendant described as "chaos." Defendant admitted seeing McElroy on the floor, and that at some point, another customer tried to enter the store but he blocked or locked the door so the person would not see what was happening inside and so that they would not get caught. Defendant also admitted taking several cases of beer from the "fucking punk" and stealing McElroy's car from the parking lot. Defendant denied that he had killed McElroy and refused to say who had murdered him.

A defense investigator, Joe Barthel, interviewed Wilson in state prison after Wilson was convicted and sentenced in connection with these crimes. Wilson told Barthel that he killed McElroy. He hated McElroy and went to the store to give him a hard time. When McElroy "bad-mouthed" Wilson, in Wilson's words, "it kicked off." Wilson lost his temper, grabbed a piece of metal, and hit and stabbed McElroy multiple times.

After considering the above-described evidence, the trial court ultimately denied the petition. Based on the verdicts and evidence, it appeared defendant was not the actual killer so the court reviewed the evidence under the factors set forth in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and *In re Scroggins* (2020) 9 Cal.5th 667 "to determine whether or not [defendant was a] major participant in the underlying felony who acted with reckless indifference to human life."

The trial court found some factors favored granting the petition, including that defendant did not supply Wilson with a weapon; that it did not appear he knew Wilson was going to use a weapon as the metal rods appeared to be improvised weapons grabbed

6

during the attack; and that the incident was relatively short in duration. However, it also determined that several other circumstances heavily outweighed those factors in favor of denying the petition because defendant was a major participant who acted with reckless indifference to human life under *Banks* and *Clark*.

In the trial court's view, the evidence showed that defendant and Wilson had planned to commit a robbery after running out of beer that morning; that McElroy, according to defendant, always treated Indians bad and he and Wilson were of Native American descent; that shortly before the attack defendant had stated he wanted to do something that would make him go back to prison; that defendant was aware Wilson intended to harm McElroy given that Wilson hated McElroy and said he wanted to go to the store to "fuck with the guy"; and that once defendant and Wilson entered the store they waited until Rhoades was almost out of the store before Wilson first pushed McElroy to the floor and attacked him. Defendant then prevented another person from coming into the store so that the person would not see what was happening and to prevent them from getting caught.

Wilson killed McElroy in close proximity to defendant in the store. Rather than assisting McElroy when Wilson first attacked him or preventing Wilson from injuring him further, defendant instead locked or blocked the door to prevent a third party from entering the store and possibly intervening or providing assistance. Instead of stopping the attack or rendering aid, defendant grabbed cases of beer from the store and loaded them into McElroy's car, which he stole after McElroy had been killed. In his statement to police, defendant described taking the beer from "the fucking punk," referring to McElroy. The trial court found that defendant's "callousness and reckless indifference" continued after the killing when he and Wilson drove McElroy's car to a house where they divided up the money taken from the store, they burned Wilson's clothes, and defendant later drank the stolen beer.

Defendant timely appealed.

# DISCUSSION

## I

### *Senate Bill 1437 and Standard of Review*

Senate Bill 1437 amended the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice (§ 188, as amended by Stats. 2018, ch. 1015, § 2), and by amending section 189 to state that a person can be liable for felony murder only if: (1) the "person was the actual killer"; (2) the person, with an intent to kill, was an aider or abettor in the commission of murder in the first degree; or (3) the "person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3.)

Where, like here, the trial court issues an order to show cause and holds an evidentiary hearing, the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder under California law as amended by the changes to section 188 or section 189 made effective by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) The parties may offer evidence from a prior trial, or new or additional evidence at the hearing. (*Ibid.*)

We review the denial of a section 1172.6 petition following an evidentiary hearing for substantial evidence. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125.) "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to

8

support a rational fact finders' findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)  We examine " 'the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.' " (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657-658.)  "We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence." (*People v. Pham* (2009) 180 Cal.App.4th 919, 924-925.)

## II

### *Banks/Clark Factors*

When "Senate Bill 1437 amended Penal Code section 189 to incorporate major participation and reckless indifference requirements, it codified the understanding of those requirements elucidated in *Banks* and *Clark*." (*People v. Strong* (2022) 13 Cal.5th 698, 710.)

*Banks* considered "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant . . . ." (*Banks*, *supra*, 61 Cal.4th at p. 794.)  The high court identified various factors that should be considered in making the determination, including:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted.)

9

The *Banks* court recognized that "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Banks*, *supra*, 61 Cal.4th at p. 803.) Instead, all of the factors "may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Ibid.*; see also *Tison v. Arizona* (1987) 481 U.S. 137 [brothers who helped break father and cellmate out of prison and who helped flag down car with family of four who father and cellmate later murdered played significant role in crimes and could have foreseen that their actions created a grave risk of death]; *Enmund v. Florida* (1982) 458 U.S. 782 [defendant who drove accomplices to the victims' home for armed robbery during which he remained in the car could not constitutionally be sentenced to death where driver did not kill, attempt to kill, or intend that a killing take place during the robbery and he was not present when the killing took place].)

Applying these factors, the *Banks* court found the evidence was insufficient to show the defendant there—a getaway driver for an armed robbery of a medical marijuana dispensary—was a major participant. There was no evidence establishing his role in planning the robbery or procuring weapons, and no evidence he was present for the robbery or played a role in instigating the shooting. (*Banks*, *supra*, 61 Cal.4th at pp. 794-795, 805, 807-808.)

Our Supreme Court considered the "reckless indifference" element in *Clark*. (*Clark*, *supra*, 63 Cal.4th at pp. 614-623.) Reckless indifference to human life is " 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' " (*Id.* at p. 616.) It "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Id.* at p. 617.) Recklessness has both a subjective and an objective component. (*Ibid.*) Subjectively, the defendant must consciously disregard risks known to him. (*Ibid.*) Objectively, recklessness is determined by "what

10

'a law-abiding person would observe in the actor's situation,' " that is, whether defendant's conduct " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' " (*Ibid.*)  The fact a robbery involved a gun or carried a risk of death is insufficient, by itself, to support a finding of reckless indifference.  (*Id.* at pp. 617-618; see also *In re Scroggins*, *supra*, 9 Cal.5th at p. 677 [" 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life"].)

 *Clark*, like *Banks*, identified various factors to be considered in determining whether the defendant acted with reckless indifference.  (*Clark*, *supra*, 63 Cal.4th at pp. 618-623.)  These include:  "Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used?  Was the defendant physically present at the crime?  Did he or she have the opportunity to restrain the crime or aid the victim?  What was the duration of the interaction between the perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risk of violence during the felony?"  (*In re Scroggins*, *supra*, 9 Cal.5th at p. 677 [listing factors set forth in *Clark*, at pp. 618-623].)  Applying these factors, the *Clark* court found the evidence was insufficient to show the defendant acted with reckless indifference to human life in the armed robbery of a computer store, where he planned the robbery but was not armed or physically present in the store when the victim was shot, did not have the intent to kill, and attempted to minimize the likelihood of violence by timing the robbery for a time when fewer people would be present and using an unloaded gun.  (*Clark*, at pp. 611, 618-623.)

# III

## *Sufficiency of the Evidence*

Defendant argues the trial court erred in denying his resentencing petition because there was no substantial evidence that he was a major participant in the robbery who acted with reckless indifference to human life. We disagree.

*A.*      *Major Participation (Banks)*

For the first *Banks* factor, we look to defendant's role in planning the criminal enterprise. (*Banks*, *supra*, 61 Cal.4th at p. 803.) The trial court found defendant and Wilson had planned to commit a robbery after running out of beer. Substantial evidence supports this finding. The morning of the incident, defendant had been drinking on the hill with others when he told Martinez that he and Wilson were "going to go down to the store and take, steal, or rob some beer." During that same conversation, defendant had also told Martinez that "he wanted to do something that would make him go back to prison." They immediately put their plan into action by walking down the hill and into the store where they confronted McElroy, who, in defendant's view, was a "fucking punk" who always disrespected and mistreated Native Americans like himself and Wilson. As the trial court noted, Wilson wanted to "fuck with" McElroy while he was working to see what happened when they robbed the store. From this evidence, a rational fact finder could reasonably infer that both defendant and Wilson hated McElroy and planned to physically harm him during the robbery. Thus, the first *Banks* factor weighs in favor of defendant being a major participant.

The trial court found that the second *Banks* factor—supplying or using lethal weapons—was not present. (*Banks*, *supra*, 61 Cal.4th at p. 803.) Substantial evidence supports the trial court's finding. No evidence shows that either defendant or Wilson had the metal bars used to beat and stab McElroy with them when they entered the store; rather, as the court recognized, the metal bars appeared to be improvised weapons that

12

Wilson grabbed during the assault. As the trial court impliedly found, the second *Banks* factor weighs against defendant being a major participant.

For the third *Banks* factor, we consider defendant's awareness of the dangers posed by the nature of the crime, the weapons used, or the past experience or conduct of the other participants. (*Banks*, *supra*, 61 Cal.4th at p. 803.) The trial court found defendant harbored ill-will toward McElroy and implicitly knew that Wilson, whom he had been drinking beer with that morning, also hated McElroy and wanted to "fuck with" him or otherwise "had an intent to harm the victim." The evidence and reasonable inferences from the evidence support this finding. Defendant himself said that he wanted to do something criminal that would land him back in prison and labeled McElroy a "fucking punk." A reasonable trier of fact could conclude from this evidence that defendant was aware that he and Wilson each posed a grave danger to McElroy during the robbery and that they wanted to do more than simply take beer from him without paying.

For the fourth *Banks* factor (presence at the scene and in a position to facilitate or prevent killing) (*Banks*, *supra*, 61 Cal.4th at p. 803), substantial evidence supports the trial court's finding that defendant was at the scene and in close proximity to the victim and that he had the opportunity to prevent the murder or at least allow others to intervene on the victim's behalf. The evidence showed that defendant and Wilson waited to attack McElroy until Rhoades was exiting the store, leaving McElroy alone with defendant and Wilson. After hearing a large crash, Rhoades looked back and saw McElroy on the floor with defendant and Wilson standing near him. While Wilson continued to beat and stab McElroy with the metal rods, rather than attempt to stop Wilson or otherwise render aid to McElroy, defendant instead locked the front door to prevent another customer who happened upon the scene from getting inside the store and either discovering what defendant and Wilson had done or assisting McElroy as he was helpless and severely

13

injured on the ground. This evidence amply supports the finding that defendant was a major participant in the crimes.

For the final *Banks* factor, we focus on what defendant did after lethal force was used. (*Banks*, *supra*, 61 Cal.4th at p. 803.) After the brutal attack, defendant stole beer and money from the register and left the scene by stealing McElroy's car. No evidence showed he called 911 or sought help for McElroy. Defendant then drove to his sister's house where he and Wilson counted the money they had stolen, and removed and burned Wilson's blood-stained clothes to hide evidence of McElroy's killing. Defendant also later drank the stolen beer as he casually recounted McElroy's killing to his friend Taylor. This factor also weighs in favor of a finding that defendant was a major participant.

Based on the totality of the circumstances and viewing the evidence in the light most favorable to the judgment, we conclude substantial evidence supports the trial court's implicit finding that defendant was more than a passive participant in the robbery and killing. (*Banks*, *supra*, 61 Cal.4th at p. 803 [not all *Banks* factors are necessary to find a defendant acted as a major participant during a felony murder].)

B.     *Reckless Indifference to Human Life (Clark)*

There is a recognized overlap between being a major participant and having a reckless indifference to human life, and, as our Supreme Court acknowledged in *Clark*, " 'the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Clark*, *supra*, 63 Cal.4th at p. 615.) Applying the *Clark* factors, we conclude the record contains sufficient evidence from which the trial court could conclude beyond a reasonable doubt that defendant acted with reckless indifference to McElroy's life.

While evidence of the first and third *Clark* factors—defendant's knowledge and use of weapons during the robbery and killing, and the duration of the felony (*Clark*, *supra*, 63 Cal.4th at pp. 618, 620) which the trial court found was short because it occurred approximately six minutes after defendant and Wilson entered the store—were

14

absent, substantial evidence of the remaining *Clark* factors was presented. (*Id.* at pp. 619, 621-622.)

For the second *Clark* factor (presence at the scene and opportunity to prevent or mitigate the crime or aid the victim) (*Clark*, *supra*, 63 Cal.4th at p. 619), as discussed above, not only was defendant present at the scene when McElroy was killed but he also actively locked the door preventing a third party from entering the store during the killing. His actions stopped the third party from observing the crime, reporting it to the police, or, at a minimum, offering McElroy assistance. And defendant did nothing to help McElroy or stop Wilson during the deadly attack. Instead, he stole beer from the "fucking punk," took money from the cash register, stole McElroy's car, and then divvied up the spoils of the robbery with Wilson as they left McElroy dead or dying without aid.

For the fourth *Clark* factor (knowledge codefendant was likely to kill) (*Clark*, *supra*, 63 Cal.4th at p. 621), the evidence showed defendant and Wilson both despised McElroy because of his alleged poor treatment of Native Americans and his disrespect toward them in particular. Wilson admittedly wanted to "fuck with" McElroy and defendant wanted to do something that would get himself sent back to prison. Given this evidence, the trial court reasonably could infer that defendant and Wilson had discussed their mutual hatred of McElroy while they drank on the hill before the attack and that defendant had ample warning that Wilson intended to significantly harm McElroy when they walked down the hill and into the store to steal beer and get into a confrontation with McElroy.

The final *Clark* factor—minimizing the risks of violence during the felony (*Clark*, *supra*, 63 Cal.4th at pp.621-622)—also weighs against defendant. There is nothing in the record indicating that defendant did anything to minimize the risk of violence during the crime. Rather, defendant's locking the door and blocking the customer from entering the store during the attack heightened the risk of violence to McElroy.

15

Defendant's reliance on a multitude of cases with diverse facts does not compel a different conclusion. "When we decide issues of sufficiency of the evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts." (*People v. Thomas* (1992) 2 Cal.4th 489, 516.) In any event, the defendant in *In re Ramirez* (2019) 32 Cal.App.5th 384, stayed behind while his cohort committed the actual robbery and there was no indication that he knew his cohort would kill. (*Id.* at pp. 390-391, 404-405.) In *In re Bennett* (2018) 26 Cal.App.5th 1002, there was no indication that the defendant knew his compatriots were dangerous and he waited across the street while the robbery took place. (*Id.* at pp. 1020-1021.) Here, by contrast, defendant was present and participated in the robbery; implicitly knew that Wilson wanted to harm McElroy during the robbery based on their shared animosity toward the man and acknowledged that he himself wanted to do something criminal that would land him back in prison; and defendant also locked the door to avoid detection or to stop a potential good Samaritan from stopping the attack or rendering aid. That an after-the-fact indifference to a death occurring during the felony is insufficient, standing alone, to establish reckless indifference according to *In re Taylor* (2019) 34 Cal.App.5th 543, does not mean the trial court here based its reckless indifference finding only on defendant's attitude after McElroy was killed. Rather, the trial court rightfully noted defendant's plan to rob the store and do something that would get him sent back to prison, his immediate presence at the scene when the killing occurred, his failure to render aid, and his active efforts to block others from rendering such assistance.

To the extent defendant argues that different inferences more favorable to him can be drawn from the evidence, defendant misapprehends the applicable sufficiency of the evidence standard of review on appeal. Defendant cannot successfully challenge the sufficiency of the evidence merely by offering "competing inferences he wishes the [trial court] had drawn." (*People v. Casares* (2016) 62 Cal.4th 808, 827.)

16

Accordingly, we conclude from the totality of the evidence and reasonable inferences from the evidence that substantial evidence supports the trial court's findings that defendant was a major participant who acted with reckless indifference to human life.

**DISPOSITION**

The order denying the petition is affirmed.


        /s/                     
        WISEMAN J.*


We concur:


  /s/                
HULL, Acting P. J.


  /s/                
FEINBERG, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.